# United States Court of Appeals
## For the First Circuit

```
No. 24-1244

    DELMA TERENZIO, as Personal Representative of the Estate of
 Joseph A. Terenzio; THOMAS SULLIVAN, as Personal Representative
   of the Estate of John J. Sullivan; EDWARD POULIN, as Personal
        Representative of the Estate of Maurice C. Poulin,

                        Plaintiffs, Appellants,

                                  v.

     FRANCISCO URENA; MARYLOU SUDDERS; CHERYL LUSSIER POPPE;
         JOHN DOE 1; JANE DOE 1; JOHN DOE 2; JANE DOE 2,

                         Defendants, Appellees.


              APPEAL FROM THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF MASSACHUSETTS

              [Hon. Indira Talwani, U.S. District Judge]


                                Before

                        Barron, Chief Judge,
             and Rikelman,* Circuit Judge.


     Christopher M. Reilly, with whom Anthony J. Antonellis, John
A. Donovan III, and Sloane & Walsh, LLP were on brief, for
appellants.

     Austin P. Anderson, with whom Lon F. Povich, Christina S.
```

---

* Judge Selya heard oral argument in this case and participated in the initial semble thereafter. His death on February 22, 2025 ended his involvement in this case. The remaining two panelists issued this opinion pursuant to 28 U.S.C. § 46(d).

Marshall, Kristen R. Gagalis, Anderson & Kreiger LLP, Robert L. Peabody, Husch Blackwell, LLP, and Richard Goldstein were on brief, for appellees.

———————————

December 18, 2025

———————————

**BARRON**, <u>Chief Judge</u>.  This appeal concerns the Soldiers' Home in Chelsea, Massachusetts, a state-run facility that provides long-term care for veterans.  In Spring 2020, three veterans -- Joseph A. Terenzio, John J. Sullivan, and Maurice C. Poulin -- died after contracting COVID-19 while living at the Soldiers' Home.  Representatives of the estates of the three veterans (the "Representatives") thereafter sued multiple Massachusetts state officials responsible for the operation of the Soldiers' Home (the "Defendants").  The Representatives alleged that the Defendants had violated the substantive due process rights of the three veterans, as well as other similarly situated veterans in a putative class.  The claims premised the alleged constitutional violations on the Defendants' response to the threat posed by COVID-19 to the veterans while they were residing at the Soldiers' Home and the living conditions that were maintained at the facility during that time.

    The Defendants filed a motion to dismiss, which the United States District Court for the District of Massachusetts granted based on the Defendants' qualified immunity.  The Representatives now appeal.  Although the conduct alleged in the Representatives' complaint is quite disturbing, we must affirm, given the arguments that have been made on appeal.

I.

The Representatives filed the operative complaint on May 11, 2023. It named as Defendants Francisco Urena, the former Secretary of the Massachusetts Department of Veterans' Services; Marylou Sudders, the former Secretary of Massachusetts' Executive Office of Health and Human Services; Cheryl Lussier Poppe, the former Superintendent of the Soldiers' Home; and four unnamed officials who had been affiliated with the Soldiers' Home.[1]

The complaint set forth claims under 42 U.S.C. § 1983 for damages against the Defendants in their individual capacities. The claims allege that the Defendants violated the veterans' substantive due process rights under the Fourteenth Amendment of the U.S. Constitution through the Defendants' (1) response to the COVID-19 pandemic and (2) improper maintenance of the Soldiers' Home facilities while the virus was spreading.

Regarding the response to COVID-19, the Representatives allege that the Defendants failed to ensure that the Soldiers' Home residents were properly socially distanced, permitted the commingling of sick and nonsick residents and employees, lacked testing procedures for employees, discouraged employees from wearing certain protective gear, and lacked overarching COVID-19 procedures. Regarding the living conditions, the Representatives

---

[1] The four unnamed officials are not parties to this appeal.

allege that the Defendants maintained inhumane and unsafe living conditions by leaving residents to sit in their own excrement for extended periods of time; failing to clean various rooms that contained human excrement, rodents, and bugs; improperly restraining residents; and allowing illegal drugs to enter the Soldiers' Home.

On July 21, 2023, the Defendants filed a motion to dismiss. They asserted that the Representatives failed to sufficiently allege a substantive due process violation and that, in any event, they were entitled to qualified immunity because the claims did not allege a violation of clearly established law. The District Court granted Defendants' motion on February 12, 2024, and ordered dismissal of the complaint on February 13, 2024.

The District Court explained that the Representatives' COVID-19-response claims "fail[ed] to specify how any individual Defendant was involved in the alleged misconduct." As a result, the District Court concluded, the claims necessarily "fail[ed] on both prongs of the qualified immunity analysis."

The District Court then addressed the Representatives' living-conditions claims. It determined that these claims failed to sufficiently allege a constitutional violation because the complaint failed to detail "any specifics" describing how the named veterans were individually harmed by the living conditions described in the complaint, especially where the allegations were

based on facts "documented in the 2022 and 2023 Reports," while the veterans died in 2020. The District Court also concluded that "there was no clearly established controlling authority" showing that "physically limited, long-term residents are de facto involuntary wards of a state-run facility." Thus, the District Court concluded that qualified immunity barred these claims.

This timely appeal followed.

## II.

The Fourteenth Amendment's Due Process Clause prohibits any person acting under color of law from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Clause's procedural component "ensures that government, when dealing with private persons, will use fair procedures," while its substantive component "safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them." DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005).

Only the Clause's substantive protections are at issue in this appeal. As a general matter (save for exceptions discussed further below), to state a substantive due process claim, a plaintiff must plausibly allege that the person acting under color of state law named as the defendant directly caused the harm in question. That is because, in general, "a State's failure to

protect an individual against private violence simply does not constitute a violation of the Due Process Clause." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989).

Because the Defendants were acting under color of law and are being sued for damages in their individual capacities, they may be entitled to qualified immunity. To successfully assert that defense, at the motion to dismiss stage, they must make either of two showings: (1) that the Representatives have failed to plausibly allege a federal constitutional violation at all, or (2) that the Representatives have failed to show that the conduct alleged to constitute a substantive due process violation was undertaken in contravention of clearly established law. See Maldonado v. Fontanes, 568 F.3d 263, 268-69 (1st Cir. 2009).

"We review the dismissal of a complaint under Rule 12(b)(6) de novo." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). In doing so, we ask "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiffs, the complaint states a claim for which relief can be granted." Id. "[W]e are not wedded to the district court's reasoning" but instead can affirm its decision "on any ground made manifest by the record." Young v. Wall, 642 F.3d 49, 52 (1st Cir. 2011).

**III.**

As to the Representatives' COVID-19-response claims, we agree with the Defendants, that, insofar as the complaint alleges that "[t]he defendants created and/or enhance[d] the danger of death or illness to the residents of [the Soldiers' Home] by <u>failing</u> to protect the residents from the risks associated with the COVID-19 virus and <u>failing</u> to address or mitigate the grave risks posed by the COVID-19 virus," (emphasis added), it does not allege that the Defendants "did anything to harm [the veterans] directly," <u>Souza</u> v. <u>Pina</u>, 53 F.3d 423, 426 (1st Cir. 1995). Similarly, as to the Representatives' living-conditions claims, we agree with the Defendants that, insofar as the complaint alleges that "the defendants <u>failed</u> to provide the veteran residents of the [Soldiers' Home] with clearly established minimally adequate living conditions and forced the veterans at the [Soldiers' Home] to live in unsafe and unsanitary conditions," (emphasis added), it does not allege that the Defendants "did anything to harm [the veterans] directly," <u>id.</u>

The Representatives appear to argue otherwise by invoking our precedents explaining that proximate causation under § 1983 "can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury,"

Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) (quoting Springer v. Seaman, 821 F.2d 871, 879 (1st Cir. 1987)). The Representatives contend, based on these precedents, that it follows that a state actor is "responsible for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." (Citation modified.)

The invocation of these precedents does not support the Representatives' contention, however, because the Representatives do not identify any "others" who have inflicted the constitutional injury. Gutierrez-Rodriguez, 882 F.2d at 561. Nor do the Representatives explain how the complaint plausibly alleges that the deaths or other harms were attributable to reasonably foreseeable forces of the kind that our precedents recognize as able to establish proximate causation.

In addition to the allegations in the complaint that we have just addressed, the Representatives do direct our attention to what they describe as "affirmative acts" that they allege in their complaint. The record citations supporting that conclusory assertion, however, refer to a long list of facts, many of which describe instances in which the Defendants either failed to do something or merely permitted others to do something. And the Representatives make no effort to offer any insight into the criteria for deeming an act "affirmative." At most, they note that some of their allegations are "extremely similar" or

"identical" to claims that a grand jury found "sufficient to establish probable cause" that supervisors at another Soldiers' Home facility had "'engaged in intentional conduct of omission.'" (Quoting Commonwealth v. Clinton, 207 N.E.3d 487, 507 (Mass. 2023).)  Thus, because the Representatives have presented this "affirmative acts" argument in a "skeletal way," "we see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

The Representatives also contend based on an out-of-circuit district court case -- Woodson v. City of Richmond, 88 F. Supp. 3d 551 (E.D. Va. 2015) -- that they have sufficiently alleged that the Defendants directly caused the alleged harms as to the COVID-19 claims because their complaint alleges that the Defendants "put the veterans in vulnerable, unsafe situations such that they contracted the disease in the first place."  (Quoting Terenzio v. Urena, No. 23-cv-10462, 2024 WL 555771, at *3 (D. Mass. Feb. 12, 2024).)  But Woodson involved a state prisoner's Eighth Amendment claim under § 1983, 88 F. Supp. 3d at 562, and, as the Defendants point out, "there is a dispositive distinction between prison inmates who are involuntarily dependent on the state and people who have 'voluntarily availed [themselves] of a Commonwealth service.'"  (Quoting Monahan v. Dorchester Counseling

Ctr., Inc., 961 F.2d 987, 993 (1st Cir. 1992)) (alteration in original).  Thus, we do not see how Woodson supports the Representatives' contention that their complaint sufficiently alleges a clearly established substantive due process violation.

Of course, in some circumstances, a plaintiff may be able to state a claim for a substantive due process violation even without alleging that the defendant directly caused the alleged harm.  For example, a plaintiff may be able to do so by showing that the defendant had a "special relationship" with the plaintiff that gave the defendant an affirmative duty to protect the plaintiff from the alleged harm that was directly caused by a private actor.  Monahan, 961 F.2d at 991.  Or a plaintiff may be able to do so by showing that the defendant was responsible for creating the danger that resulted in the plaintiff being directly harmed by a private actor.  See Irish v. Fowler, 979 F.3d 65, 73-75 (1st Cir. 2020).  But, on appeal, the Representatives disclaim any reliance on either of these exceptions to the general requirement that the defendant must have directly caused the alleged harm.

That said, we recognize that, in support of their claims, the Representatives invoke one of our cases concerning the special relationship exception -- Harper v. Cserr, 544 F.2d 1121 (1st Cir. 1976) -- as well as other caselaw building on Harper.  But, while Harper does establish, in the Representatives' words, "that patients who technically voluntarily commit themselves to a state

facility" can "become de facto involuntarily committed as a result of their 'relatively helpless' nature" or other circumstances, it is not our last word on the subject.  In Monahan, we relied on DeShaney to clarify that the helplessness analysis in Harper applies only if a government official affirmatively acts to restrain a person's ability to act on their own.  See 961 F.2d at 992 ("[The Plaintiff's] helplessness was not attributable to the state's having taken him into custody involuntarily.  DeShaney teaches that the Constitution is implicated only when the state takes an affirmative act which restrains the individual's freedom to act on his own behalf."  (citation modified)).

On appeal, the Representatives appear to argue, with respect to Monahan, that the Defendants affirmatively acted to restrain the veterans when "the [Soldiers' Home] prohibited the Veterans' families from entering" the Soldiers' Home during the COVID-19 pandemic.  But the prohibition on family visitation does not itself suffice plausibly to show that the Soldiers Home "force[d]" the veterans, "against [their] will, to become dependent upon it."  Id. at 993.  Nor does that prohibition in and of itself suggest that the veterans "would have been barred from leaving [the Soldiers' Home] upon request."  Id. at 992.

The Representatives also allege that the Defendants "[c]reat[ed] unsafe conditions of confinement for the veterans at the [Soldiers' Home]" through the Defendants' "acts or omissions."

- 12 -

(Emphasis added.)  But, as phrased, this allegation fails to support their contention to us that their complaint satisfies <u>Monahan</u>'s requirements.  As a result, the Representatives have not explained to us how they have alleged enough under <u>Monahan</u>.

**IV.**

The judgment is **<u>affirmed</u>**.